UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

SAEED KAID,

Defendant.

**ORDER**

16 Cr. 281 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Pending before the Court is Defendant Saeed Kaid's motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons stated below, Kaid's motion (Dkt. No. 961) will be denied.

**BACKGROUND**

On December 15, 2017, Kaid pled guilty to racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and to conspiracy to distribute and possess with intent to distribute 280 grams and more of cocaine base, one kilogram and more of heroin, and five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (Plea Tr. (Dkt. No. 202); see also Jan. 5, 2018 Order (Dkt. No. 217))

Kaid's guilty plea arose from his longtime involvement in the "Blood Hound Brims," "a racketeering organization that engaged in large-scale drug trafficking and acts of violence." As a member of this gang, Kaid sold large quantities of cocaine, crack cocaine, and heroin in and around Elmira, New York, and "was involved in several shootings, both as a victim and as a perpetrator." (See Sent. Tr. (Dkt. No. 332) at 21-23)

At Kaid's May 29, 2018 sentencing, this Court concluded that he was a career offender, that he faced a statutory mandatory minimum sentence of ten years' imprisonment, and

that the applicable range under the Sentencing Guidelines was 262 to 327 months' imprisonment. (Id. at 8-9)

This Court granted a variance from the Guidelines, based on the Defendant's tragic and traumatic childhood, significant mental health issues, and long history of significant substance abuse. (Id. at 26) Moreover, as the Court discussed at sentencing, in April 2009, Kaid was shot multiple times by a fellow gang member and left for dead on the side of the road. A bullet pierced his lung and he fell into a coma. He was hospitalized for a month and underwent several serious operations during that time. (Id. at 22; PSR ¶ 93)

Despite Kaid's serious criminal record – which included felony convictions for robbery in the second degree and three drug trafficking offenses (PSR ¶¶ 72-75) – this Court imposed the statutory mandatory minimum sentence of ten years' imprisonment. (Sent. Tr. (Dkt. No. 332) at 27) Moreover – pursuant to U.S.S.G. § 5G1.3 and United States v. Rivers, 329 F.3d 119 (2d Cir. 2003) – this Court credited Kaid for five and a half years he had served in connection with a state conviction that constitutes relevant conduct under the Sentencing Guidelines. (Sent. Tr. (Dkt. No. 332) at 27; Am. Judgment (Dkt. No. 324)) Accordingly, Kaid's effective sentence was four years and ten months' imprisonment. (Am. Judgment (Dkt. No. 324)) Finally, this Court provided that Kaid's sentence in the instant case would run concurrently with the remainder of the state sentence that he was then serving. (Sent. Tr. (Dkt. No. 332) at 33-34; Am. Judgment (Dkt. No. 324) at 2-3)

Given the crimes Kaid committed in the instant case, his serious criminal record, and the applicable Sentencing Guidelines range of 262 to 327 months' imprisonment, the sentence imposed by the Court was lenient.

Kaid is now serving his sentence at FCI-Fairton.  (See Def. Mot. (Dkt. No. 961) at 2)  His projected release date is September 16, 2022.[1]  (See Def. Mot., Ex. B (Dkt. No. 961-1) at 4)

On January 15, 2021, Kaid submitted a request for compassionate release to the administrative remedy coordinator at FCI-Fairton.  (See Def. Mot., Ex. C (Dkt. No. 961-1) at 5)  On March 15, 2021, Kaid filed a pro se motion for compassionate release with this Court, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Def. Mot. (Dkt. No. 961))

In his motion, Kaid contends that he should be granted compassionate release because he suffers from asthma and other respiratory conditions that make him more susceptible to contracting the COVID-19 virus.  (Id. at 8-10)  Kaid further argues that a recent outbreak of COVID-19 at FCI-Fairton poses a serious danger to his health.  (Id. at 11-15)  Finally, Kaid contends that the Section 3553(a) sentencing factors support his release.  (See id. at 18–21)

In opposing Kaid's application, the Government contends that he has not demonstrated "extraordinary and compelling circumstances" justifying his release, and that the sentencing factors set forth in Section 3553(a) weigh heavily against granting Kaid's application. (Govt. Opp. (Dkt. No. 971) at 4-9)

## DISCUSSION

**I.    LEGAL STANDARDS**

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A)(i) – provides that a court may

---

[1] On August 26, 2020, the date of the Bureau of Prisons Sentence Monitoring Computation Data sheet submitted by Kaid, his projected release date was August 7, 2022.  (Def. Mot., Ex. B (Dkt. No. 961-1) at 4)  On September 22, 2020, however, Kaid lost forty days of good time credit as a sanction for possessing a dangerous weapon in prison.  (Govt. Br., Ex. B (Dkt. No. 971-2) at 1)  Accordingly, Kaid's projected release date is currently September 16, 2022.

3

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . , reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Pursuant to the statute, an inmate seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." Id.

A court considering an application for compassionate release must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine whether there are "extraordinary and compelling reasons [that] warrant . . . a reduction [in sentence]." Id. "[T]he district court has broad discretion in evaluating a defendant's motion for compassionate release," United States v. Vargas, No. 88-CR-325 (VEC), 2020 WL 6886646, at *3 (S.D.N.Y. Nov. 24, 2020), and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them. . . ." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

## II. ANALYSIS

While the parties agree that Kaid has exhausted his administrative remedies (Def. Mot. (Dkt. No. 961) at 6; Govt. Opp. (Dkt. No. 971) at 4), they disagree as to whether (1) the Defendant has demonstrated "extraordinary and compelling reasons" that warrant a sentence reduction; and (2) the Section 3553(a) factors favor a sentence reduction. (Def. Mot. (Dkt. No. 961) at 6-21; Govt. Opp. (Dkt. No. 971) at 5-9)

4

A.     **"Extraordinary and Compelling Reasons"**

In order to prevail on his compassionate release motion, Kaid must demonstrate that "extraordinary and compelling reasons warrant . . . a reduction" in his sentence, and that any reduction that is granted comports with "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Here, Kaid – who is 41 years old – argues that he suffers from asthma and right-sided aortic arch, hyper-inflated lungs. He further notes that – as a result of the April 2009 shooting discussed above – he suffered a collapsed lung, and that in 2017 he was diagnosed with tuberculosis. (Def. Mot. (Dkt. No. 961) at 9-10); see Exs. D-E (Dkt. No. 961-1) at 6-9) As a result of these conditions, Kaid contends that he is more vulnerable to serious illness from the COVID-19 virus. (Def. Mot. (Dkt. No. 961) at 9-10)

Neither the PSR (Dkt. No. 256) nor Kaid's sentencing submissions (Dkt. No. 281) make any reference to a respiratory condition. In 2019, when Kaid first complained of respiratory problems due to asthma, Bureau of Prisons medical staff found that his condition was exacerbated by exercising. (Def. Mot., Ex. D (Dkt. No. 961-1) at 6) Medical staff concluded that Kaid had a mild case of asthma, noting that he had reported "us[ing] Albuterol [only] once a week," on an as-needed basis. (Id.)

Kaid's mild asthma condition does not constitute an "extraordinary and compelling" circumstance justifying his release. "Courts in this District have denied compassionate release motions under similar circumstances," concluding that inmates suffering from "well-controlled" or mild asthma are not at special risk from the COVID-19 virus. United States v. Roper, No. 16 CR. 505-05 (NRB), 2021 WL 1252032, at *1 (S.D.N.Y. Apr. 5, 2021) (citations omitted). According to the Centers for Disease Control and Prevention ("CDC"), mild

5

asthma is not a medical condition that presents an increased risk for severe illness as a result of contracting the COVID-19 virus. See Coronavirus Disease 2019 (COVID-19) – People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021).

Kaid has likewise not demonstrated that the conditions at FCI-Fairton warrant his immediate release. Acknowledging the risk that the COVID-19 virus poses to inmates, see United States v. Stephens, 447 F. Supp. 3d 63, 65 (S.D.N.Y. 2020) (citing United States v. Raihan, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y. Mar. 12, 2020)), as of May 25, 2021, no inmate and only two staff members at FCI-Fairton are currently testing positive for the COVID-19 virus. See Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed May 25, 2021).

In sum, Kaid has not shown that there are "extraordinary and compelling reasons" that justify his release.

B.     **Section 3553(a) Factors**

Even if Kaid had shown that "extraordinary and compelling reasons" justify his release, the Section 3553(a) actors militate against granting him compassionate relief.

18 U.S.C. § 3553(a) directs a sentencing court to consider

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
>
> (5) any pertinent policy statement—
>
> > (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At sentencing, this Court carefully considered the Section 3553(a) factors. (Sent. Tr. (Dkt. No. 332) at 21-25) As to the nature and the circumstances of the Defendant's offenses, this Court noted that Kaid had been a member of the "Blood Hound Brims" for approximately seven years. (Id. at 22) As a member of the gang, Kaid was involved in several shootings and helped manage a large-scale drug distribution operation in Elmira, New York. (Id.) "[D]espite having nearly been killed by another member of the gang [in 2009], Mr. Kaid rejoined the gang after his hospitalization." (Id.) And when Kaid returned to the gang after his near-death experience, he committed a shooting and returned to his role managing the gang's large-scale cocaine, crack cocaine, and heroin distribution operation in Elmira. (Id. at 22-23; see also PSR ¶¶ 24-29)

As to the Defendant's personal history and characteristics, prior to the instant case, Kaid had sustained three drug trafficking felony convictions as well as a conviction for robbery in the second degree. (PSR ¶¶ 72-75)  He had "repeatedly violated parole and gone on to commit new crimes." (Sent. Tr. (Dkt. No. 332) at 25)  Indeed, Kaid had "committed crimes, received substantial sentences, committed new crimes, received substantial sentences, committed new crimes, received substantial sentences, at least three or four times." (Id. at 14)  Given Kaid's lengthy history of serious criminal conduct, he presents an obvious risk of recidivism as well as a danger to the community.

And while Kaid contends that he has made a positive adjustment to incarceration (Def. Mot. (Dkt. No. 961) at 18-21), the record does not support his argument.  On September 22, 2020, Kaid was sanctioned for possessing four homemade, sharpened weapons and a lock hidden in a knotted sock.  He lost forty days of good time credit as a result of this infraction. (Govt. Opp., Ex. B (Dkt. No. 971-2) at 1, 6-9)  Kaid has also been sanctioned for refusing to obey an order, exposing himself to a female staff member, and several instances of fighting. (Govt. Opp. (Dkt. No. 971) at 4; Ex. B (Dkt. No. 971-2) at 1-14)  In sum, Kaid's disciplinary record undermines his contention that he would not pose a danger to the community if he were released.

Given Kaid's longtime participation in the affairs of a violent, large-scale drug trafficking gang, his personal involvement in several shootings, and his extensive criminal and disciplinary record, the Court concludes that the Section 3553(a) factors militate against granting his application for compassionate release.

## **CONCLUSION**

For the reasons stated above, Kaid's application for compassionate release is denied.[2] The Clerk of Court is directed to mail a copy of this decision to Defendant Kaid.

Dated: New York, New York
      May 25, 2021

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

[2] Kaid also contends that the Bureau of Prisons ("BOP") has not properly credited him for time served (see Dkt. Nos. 835, 836), asserting that BOP "has only credited [him]" for time he spent in federal custody. (Def. Mot. (Dkt. No. 835) at 2) He seeks an amended judgment and an order to BOP "clarifying [his] sentence and crediting him time as intended by this . . . Court." (Id.) That application is denied. The Amended Judgment entered by this Court (see Am. Judgment (Dkt. No. 324) is crystal clear as to Kaid's sentence: it provides for a term of imprisonment of "4 years and 10 months to run concurrently with the Defendant's outstanding state sentence." (Id. at 2) And Kaid has not shown that BOP has committed any error in calculating his projected release date.